United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVONNE ATKINS,<br><br>        Plaintiff,<br><br>    v.<br><br>WELL FARGO NATIONAL ASSOCIATION, et al.,<br><br>        Defendants. | Case No. 4:25-cv-05637-KAW<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Pending before the Court is Defendant Wells Fargo, N.A.'s motion to dismiss. (Def.'s Mot., Dkt. No. 16.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES the motion to dismiss.

## I. BACKGROUND

Plaintiff Lavonne Atkins is an elderly resident of San Francisco, and a long-time Wells Fargo customer. (Compl., Dkt. No. 1-1 at 3 ¶ 2.) She is hard of hearing and wears hearing aids, suffers from cognitive decline, and she experiences hand tremors "to the point that she can barely write." (Compl. ¶ 3.)

In July 2024, Plaintiff was 87 years old. (Compl. ¶ 2.) On July 24, 2024, Plaintiff's computer screen turned blue and indicated that her identity had been stolen and provided an emergency number for Microsoft. (Compl. ¶ 15.) From there, Plaintiff spoke with "Mike Dawson" purportedly of Wells Fargo, who convinced her that her identity had been stolen, and that her bank accounts were in jeopardy. *Id.* "Mr. Dawson" convinced Plaintiff that it was his job to prevent the theft. *Id.* Plaintiff received a copy of an authorization letter on official-looking

1 stationary from the "Board of Governors of the Federal Reserve System," authorizing Michael
2 Dawson to act as the investigating officer and represent her in regard to her holdings at Wells
3 Fargo and other financial institutions. (Compl. ¶ 16.)  Plaintiff believed that Mr. Dawson was a
4 Wells Fargo representative who was trying to help her. *Id.* Mr. Dawson convinced Plaintiff to
5 withdraw $17,000 cash, which was nearly all of the money in her Wells Fargo account. *Id.*

6       That same day, Plaintiff went to two Wells Fargo branches in San Francisco. (Compl. ¶¶
7 17-18.)  At the Chestnut Street branch, Plaintiff attempted to withdraw $17,000, but an
8 unidentified female employee who stepped in for the teller declined to authorize the $17,000
9 withdrawal after noticing that Plaintiff was on the phone and asking what it was for, and, instead,
10 only authorized a withdrawal of $5,000. (Compl. ¶ 17.)  Plaintiff contends that the employees
11 were trained to recognize the red flag hallmarks of fraud, including that she was an elderly person
12 who was suddenly attempting to empty her account by making a large cash withdrawal, that the
13 withdrawal was atypical of her banking behavior, she had a dubious story of why she needed the
14 money, and she was on the phone with someone while at the bank. *Id.*  Later that day, Plaintiff
15 went to the Union Street branch and successfully withdrew $12,000 despite exhibiting those same
16 red flags. (Compl. ¶ 18.)

17       On July 25, 2025, Mr. Dawson told Plaintiff that someone was attempting to gain access to
18 her Charles Schwab account, so he transferred her to "David Cooper," who purportedly worked
19 for Charles Schwab. (Compl. ¶ 19.)  Mr. Cooper recommended a "TreasuryDirect account" to
20 keep her money safe, and put Plaintiff in touch with "Taylor Mason," who purportedly worked for
21 Wells Fargo's fraud department. (Compl. ¶¶ 19-20.)  Between July 30 and August 9, 2024,
22 Plaintiff moved $425,102.51 from her account at Charles Schwab to Wells Fargo. (Compl. ¶ 21.)
23 During that same 10-day period, Plaintiff made eight visits to six different Wells Fargo branches,
24 where she withdrew $30,000 in cash at each visit. (Compl. ¶ 24.)

25       Plaintiff alleges that, "[e]ach day [she] returned home on the bus, and handed bags of cash
26 to young men who showed up outside the apartment building where she lives." (Compl. ¶ 25.)  On
27 August 12, 2024, Plaintiff entered a Wells Fargo branch and purchased a $99,000 bank draft.
28 (Compl. ¶ 27.)  While the bank issued the check, one or more employees contacted law

1   enforcement, which arranged with UPS to intercept the check and return it to Plaintiff. *Id.*

2   On May 30, 2025, Plaintiff filed the instant lawsuit alleging elder financial abuse in
violation of the California Welfare & Institutions Code § 15600, et seq., and a violation of unfair
Business and Professions Code § 17200. (Compl., Dkt. No. 1-1 at 3.)

On August 14, 2025, the case was reassigned to the undersigned upon the parties' consent to magistrate judge jurisdiction. (Dkt. No. 14.) On August 15, 2025, Defendant refiled the motion to dismiss. (Defs.' Mot., Dkt. No. 16.) On August 29, 2025, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 19.) On September 2, 2025, Defendant filed a reply. (Def.'s Reply, Dkt. No. 20.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a

claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

Defendant moves to dismiss both causes of action for failure to state a claim under Rule 12(b)(6).

#### A.   California Elder Abuse Act Claim

The first cause of action is for elder abuse in violation of the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare & Institutions Code § 15600, et seq. (Compl. ¶¶ 34-44.) Financial elder abuse consists of the taking, secreting, appropriating or retaining of an elder adult's real or personal property for a wrongful use, with intent to defraud, or with undue influence. Cal. Welf. & Inst. Code § 15610.30(a)(1), (3). The taking, secreting, appropriating or retaining of an elder's real or personal property for a "wrongful use" means that a defendant "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(b). Financial abuse also includes assisting in this conduct. Cal. Welf. & Inst. Code § 15610.30(a)(2). Section 15610.30(a)(2) creates liability for a person or entity that "[a]ssists in taking, secreting, appropriating, obtaining, or retaining ... property of an elder ... for a wrongful use or with intent to defraud, or both."

"The Elder Abuse Act, a remedial scheme designed to protect a vulnerable class of citizens, is generally construed broadly in favor of plaintiffs seeking relief on behalf of elders." *Royals v. Lu*, 81 Cal. App. 5th 328, 344, 296 Cal. Rptr. 3d 854, 865 (2022) (citing *Mahan v. Charles W. Chan Ins. Agency, Inc.*, 14 Cal. App. 5th 841, 860–61, 222 Cal. Rptr. 3d 360, 377

1   (2017)).

2       Defendant moves to dismiss this claim on the grounds that Plaintiff cannot plead that Well
3   Fargo had actual knowledge of the scam perpetuated by Mssrs. Dawson and Cooper and/or Ms.
4   Mason. (Def.'s Mot. at 5-6.)  Indeed, some courts have found that "[a]n aiding and abetting
5   standard applies to claims for assisting in financial elder abuse," which requires a plaintiff to
6   "plead that the defendant 'knows the other's conduct constitutes a breach of duty and gives
7   substantial assistance or encouragement to the other to so act." *Millare v. Bank of Am., N.A.*, No.
8   CV 21-8398 PA (KESX), 2022 WL 1434109, at *3 (C.D. Cal. Apr. 1, 2022).  In *Das v. Bank of*
9   *America, N.A.,* the California Court of Appeal held that when "a bank provides ordinary services
10  that effectuate financial abuse by a third party, the bank may be found to have 'assisted' the
11  financial abuse only if it knew of the third party's wrongful conduct." 186 Cal. App. 4th 727, 745
12  (2010).  Thus, Defendant contends that Plaintiff's allegation that it must have known based on the
13  red flags are insufficient to satisfy the actual knowledge requirement. (Def.'s Mot. at 6-7.)
14  Similarly, Defendant argues that the red flags only establish constructive knowledge, which is also
15  insufficient. *Id.* at 7.

16      In opposition, Plaintiff argues that both actual and constructive knowledge can be shown
17  by the circumstantial evidence alleged. (Pl.'s Opp'n at 6.)  The Court agrees. While *Das* is surely
18  binding, the notable difference here is that the Federal Rules of Civil Procedure apply to the
19  instant motion. Under Rule 9(b), "substantial assistance of the underlying fraud 'must be pleaded
20  with particularity,' while actual knowledge of the underlying fraud 'may be averred generally.'"
21  *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113 (S.D. Cal. 2024) (quoting *Lorenz v. E. W.*
22  *Bancorp, Inc.*, Case No. 2:15-cv-06336-CAS(FFMx), 2016 WL 199392, at *7 (C.D. Cal. Jan. 14,
23  2016)).  Here, Plaintiff alleges that the bank tellers knew that there was fraud based on the
24  circumstances—her age, banking history, number and amount of transactions, etc.—and still gave
25  her hundreds of thousands of dollars in cash.  Like the *Bhatia* court, this is sufficient at the
26  pleading stage, where knowledge can be averred generally. 725 F. Supp. 3d at 1114.  Moreover,
27  Plaintiff's allegations are plausible under *Twombly/Iqbal*, because Plaintiff alleges that the Wells
28  Fargo employee recognized that fraud was occurring on July 24, 2024, when she declined to

process the $17,000 withdrawal, and, instead, only permitted Plaintiff to withdraw $5,000. (*See* FAC ¶ 40.) Taken as true, this is sufficient to allege actual knowledge at the pleading stage. Any evidence to the contrary may be considered on summary judgment.

Accordingly, the motion is denied as to the first cause of action.

### B. UCL Claim

Next, Defendant moves to dismiss the UCL claim on the grounds that Plaintiff lacks standing, she has no available remedy, and she has not alleged unlawful or unfair conduct. (Def.'s Mot. at 8-10.) The Court disagrees on all accounts. *See* discussion, *supra,* Part III.A. Specifically, Plaintiff sufficiently alleges that Wells Fargo employees caused the loss of funds, and assessed overdraft fees, by processing suspicious withdrawals. (*See* FAC ¶¶ 43, 48, 52.) As for remedies, Plaintiff sufficiently alleges that she lost $257,000, and Wells Fargo gained three, $35 overdraft charges due to the withdrawals. (Pl.'s Opp'n at 10; *see also* FAC ¶¶ 43, 48, 52.) Finally, Plaintiff's allegation of unfair conduct is based on the same facts as the first cause of action, rendering it derivative. (*See* Pl.'s Opp'n at 11.) Thus, since the first cause of action survives, so does the UCL claim. *See id.*

Accordingly, the motion is denied as to the UCL claim.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED. Defendant shall file an answer within 21 days of this order.

Additionally, the Court sets an initial case management conference for February 10, 2026, at 1:30 p.m. via Zoom videoconference. The joint case management statement is due on or before February 3, 2026.

IT IS SO ORDERED.

Dated: December 22, 2025

KANDIS A. WESTMORE
United States Magistrate Judge

6